J-S21027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON E. LOWERY | : | |
| | : | |
| Appellant | : | No. 658 EDA 2023 |

Appeal from the PCRA Order Entered March 10, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0015192-2008

BEFORE:  LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 31, 2024**

Appellant Jason E. Lowery appeals from the order denying his first Post Conviction Relief Act[1] (PCRA) petition.  Appellant argues that his trial counsel and appellate counsel were ineffective.[2]  We affirm.

The PCRA court summarized the relevant facts and lengthy procedural history of this case as follows:

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] The PCRA statute provides that to be eligible for relief under the PCRA, the petitioner must be currently serving a sentence of imprisonment, probation, or parole for the crime at issue.  ***Commonwealth v. Tinsley***, 200 A.3d 104, 107 (Pa. Super. 2018); 42 Pa.C.S. § 9543(a)(1)(i).  On September 24, 2024, we directed the PCRA court to determine whether Appellant was still serving a sentence and eligible for PCRA relief in this matter.  On November 19, 2024, the PCRA court responded and verified that Appellant is currently on state parole at this trial court docket.  ***See*** Supplemental Rec., 11/19/24 (correspondence and parolee details).

On July 31, 1993, [Mother] gave birth to C.F. Shortly thereafter, [Mother] began dating [Appellant], and the couple had two daughters together, A.M. and N.F.M. They all lived together from the time C.F. was approximately three years old until she was seven years old, when [Mother] and [Appellant] separated. C.F. still considered [Appellant] to be her father, always had a good relationship with him, and loved him very much. [Mother] remained close to [Appellant's] mother, Joyce Bowser [(Bowser)], and relied on her for financial support and childcare.

In June of 2008, C.F. (then fourteen years old), A.M., and N.F.M. were staying at Bowser's home for the summer. The three girls shared the middle bedroom on the second floor. On June 15, 2008, [Mother] had taken C.F.'s younger sisters out for the night, and Bowser was asleep. At approximately 1:30 a.m. on June 16, 2008, [Appellant] called the house phone and C.F. answered. He told her to let him in through the front door, warning her to be quiet. C.F. let him into the house. [Appellant] again cautioned her not to wake Bowser and led her into the basement. Once there, he claimed to have heard that C.F. was sexually active. [Appellant] directed her to tell him whether this was true[,] or he would take her to a hospital to find out and tell [M]other. Not wanting him to tell [M]other, C.F. submitted to [Appellant's] order to "show him the hole," which she understood to mean her vagina. She removed her sweatpants and underwear and stood above [Appellant] as he lay on the floor. He inserted his finger into the victim's vagina against her will. Bowser came to the basement door and called for the victim, who dressed herself and went into the basement bathroom.

[Appellant] then drove the victim to a restaurant and bought her food. When they returned to Bowser's house, [Appellant] took the victim up to her bedroom. After the victim finished eating, she decided to play a game called "secrets," which she explained was played by taking turns confiding "secrets" to each other. The victim shared the "secret" that her "mom got a new friend." [Appellant] responded by changing the rules of the game to "show [each other] secrets." He showed the victim his arms and legs and attempted to show her his penis. When she refused to look, he grabbed her hand and forced her to touch it. She quickly pulled her hand away. Undeterred, [Appellant] said that it was the victim's turn to show him a secret. The victim sensed that he wanted to see a private part of her body, but [she] was unwilling to show him her vagina. She exposed her "butt" then immediately pulled up her pants and laid on her back on the bed. [Appellant]

asked her "what hole" she thought his penis "belongs in." The victim replied that she did not know. He told her that he would show her where his penis went. [Appellant] pulled down the victim's pants and underwear, kneeled between her legs, and forced his penis into the victim's vagina. After he ejaculated, [Appellant] instructed the victim not to tell [M]other. When he left the house, the victim showered and went to sleep.

Later that day, the victim was initially hesitant to report [Appellant's] assault because she did not want him to get in trouble or go to jail. That afternoon, [the victim] called [M]other and asked her to pick her up from Bowser's house. [M]other took her to her cousin's house, where she ultimately told her cousin about [Appellant's] assault.

The cousin advised the victim to tell [M]other. At approximately 9:00 p.m., the victim decided to tell [M]other, afraid that [Appellant] would also assault her younger sisters. She called [M]other at work and cried uncontrollably as she described the assault to [M]other. [Mother] was unable to leave work and could locate no one to take the victim to the hospital.

At approximately 9:00 p.m. the following day, [Mother] took the victim to the hospital, where a rape kit was performed. Police arrived and drove the victim and [M]other to the Special Victims Unit of the Philadelphia Police Department, where the victim gave a statement to Detective Thomas Martinka. He obtained a search warrant for Bowser's house. At approximately 6:30 a.m. on June 18, 2008, Detective Martinka and his partner executed the warrant, photographed the areas where the victim indicated that the assaults had occurred, and confiscated a bed sheet from the victim's bed.

A test of the bed sheet revealed the presence of semen, and a DNA analysis of the sheet found that it contained a mixture of skin and sperm cells. When compared to DNA samples obtained from the victim and [Appellant], an analysis showed that the sperm cells had come from [Appellant] and the skin cells had come from the victim. [Appellant] was arrested on September 26, 2008.

On June 11, 2010, [Appellant] filed a motion to suppress the evidence seized from Bowser's home on the grounds that the warrant was invalid and not supported by probable cause. Following a hearing on the motion to suppress on June 22, 2010, the Honorable Peter F. Rogers denied the motion.

- 3 -

On June 28, 2010, a jury before Judge Rogers found [Appellant] guilty of aggravated indecent assault, unlawful contact with a minor, and corruption of a minor,[3] but acquitted him of rape and sexual assault. On November 1, 2010, the [trial c]ourt sentenced [Appellant] to an aggregate term of three to six years of imprisonment followed by five years of probation.

[Appellant filed a direct appeal,] and on December 14, 2012, the Superior Court affirmed his judgment of sentence. [*See* ***Commonwealth v. Lowery***, 3291 EDA 2010 (Pa. Super. filed Dec. 14, 2012) (unpublished mem.)]. On July 26, 2013, the Supreme Court of Pennsylvania denied allocatur. [*See* ***Commonwealth v. Lowery***, 613 EAL 2012 (Pa. filed July 26, 2013)].

On September 9, 2014, [Appellant] filed a [timely[4]] *pro se* PCRA petition, alleging in part that trial counsel was ineffective for failing to call [Bowser] at the motion to suppress and at trial. According to her certification, if called, [Bowser] would testify that he had a reasonable expectation of privacy in her home as he often came and went as he pleased and possibly had sexual encounters with women on the bed where he molested [the victim]. [Appellant] further alleged that copies of the affidavit of probable cause from the suppression hearing and at trial bore different bailiff seals, raising an issue of fraud.

[Appellant] attached the affidavits of probable cause and his mother's witness certification to his *pro se* [PCRA] petition in support of his claims.

Appointed PCRA counsel filed an amended petition on July 13, 2016. In the amended petition, counsel preserved [Appellant's] suppression and fraud claims but failed to attach the affidavits of probable cause or the witness certification from the *pro se* petition. On November 15, 2018, the Honorable Kenneth J.

_____

[3] 18 Pa.C.S. §§ 3125(a)(8), 6301(a)(1), and 6318(a)(1), respectively.

[4] Under the PCRA, Appellant's judgment of sentence became final on October 24, 2013, ninety days after the Pennsylvania Supreme Court denied allowance of appeal and the time to pursue a writ of *certiorari* in the United States Supreme Court expired. *See* 42 Pa.C.S. § 9545(b)(3); U.S. Sup. Ct. R. 13. Accordingly, Appellant needed to file his PCRA petition within one year, or before October 24, 2014. *See* 42 Pa.C.S. § 9545(b)(1). Therefore, Appellant's September 9, 2014 PCRA petition was timely filed.

Powell, serving as PCRA court, dismissed [Appellant's PCRA] petition. The [PCRA c]ourt's dismissal order was not properly entered on the docket, however, so when [Appellant] appealed, the Superior Court quashed the appeal as interlocutory because [Appellant's] "PCRA petition remain[ed] pending in the PCRA court." ***Commonwealth v. Lowery***, 3363 EDA 2018[, 2020 WL 973347,] at *1 (Pa. Super. [filed] Feb. 27, 2020) [(unpublished mem.)].

On October 26, 2020, Judge Powell entered a properly docketed order formally dismissing [Appellant's first, timely PCRA] petition. [Appellant] appealed, and on November 11, 2021, the Superior Court affirmed the PCRA court's holding in part and remanded for reconsideration of [Appellant's] two previously summarized issues. [***See Commonwealth v. Lowery***, 16 EDA 2021, 2021 WL 5232423 (Pa. Super. filed Nov. 10, 2021) (unpublished mem.)]. In its holding, the Superior Court reasoned that [Appellant] was not given an adequate opportunity to further amend his [PCRA] petition and include the documentation that was previously submitted with his *pro se* [PCRA] petition.[5] On May 4, 2022, PCRA counsel filed a supplemental [PCRA] petition incorporating the necessary documentation to his pleadings. . . .

On January 18, 2023, the Honorable Scott DiClaudio, sitting as the PCRA court, filed a [notice of intent to dismiss without a hearing under] Pa.R.Crim.[P.] 907.

PCRA Ct. Op., 8/18/23, at 1-4 (citations omitted and some formatting altered). On March 10, 2023, the PCRA court dismissed Appellant's PCRA petition, and Appellant filed a timely appeal. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

_____

[5] A prior panel of this Court remanded to allow Appellant to supplement his PCRA petition relative to his PCRA claims concerning trial counsel's failure to call Bowser as a witness and the alleged government misconduct. ***See Lowery***, 2021 WL 5232423, at *9-10. Moreover, the panel concluded that because it was remanding the case, Appellant's claims concerning appellate counsel's failure to raise issues involving correcting the jury instruction, amending the complaint, alleged governmental misconduct related to the affidavit of probable cause, and misleading sentencing information were not yet ripe for review. ***See id.*** at *9.

On appeal, Appellant raises the following issues:

1. Whether the [PCRA] court erred in denying Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness.

2. Whether the [PCRA] court erred in not granting relief on the PCRA petition alleging counsel was ineffective.

Appellant's Brief at 8 (some formatting altered).[6]

In reviewing the denial of a PCRA petition, our standard of review

is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the

_____

[6] We note that Appellant's brief has multiple deficiencies and fails to conform with Pa.R.A.P. 2119(a). Specifically, the argument section is not divided into as many sections as there are questions presented, Appellant's arguments do not correspond to the questions presented, and some claims are completely undeveloped and lack citation to relevant legal authority. *See* Pa.R.A.P. 2119(a) (stating the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). Although we do not condone Appellant's failure to comply with our Rules of Appellate Procedure, we do not find that appellate review is completely precluded and will not quash the appeal. *See* Pa.R.A.P. 2101 (providing that if defects in the appellant's brief "are substantial, the appeal or other matter may be quashed or dismissed"). Accordingly, to the extent that we are able, we will address the issues presented. ***See, e.g., Commonwealth v. Lyons***, 833 A.2d 245, 252 (Pa. Super. 2003) (declining to quash where arguments can reasonably be discerned from the defective brief).

evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

\* \* \*

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and formatting altered); ***see also Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014) (reiterating that where a petitioner "fails to meaningfully discuss each of the three ineffectiveness prongs, [the petitioner] is not entitled to relief, and we are constrained to find such claims waived for lack of development" (citations and quotation marks omitted)); ***Commonwealth v. Hand***, 252 A.3d 1159, 1166 (Pa. Super. 2021) (holding that underdeveloped arguments are waived, and stating "[a]n appellate brief must provide citations to the record and to any relevant supporting authority. The court will not become the counsel for an appellant and will not, therefore, consider issues which are not fully developed" (citation omitted)). Counsel will not be deemed ineffective for failing to pursue a meritless claim. ***See Commonwealth v. Khalil***, 806 A.2d 415, 421 (Pa. Super. 2002).

- 7 -

Further, a PCRA petitioner does not have an absolute right to an evidentiary hearing. *See Commonwealth v. Springer*, 961 A.2d 1262, 1264 (Pa. Super. 2008). Accordingly, "a PCRA court has [the] discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Burton*, 158 A.3d 618, 622 n.4 (Pa. 2017) (citing, *inter alia*, Pa.R.Crim.P. 907(1)). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Id.* at 625 n.12 (citation omitted).

In his first issue, Appellant challenges the PCRA court's decision to dismiss his petition without a hearing. However, Appellant's argument consists of merely a statement of the standard of review and a bald assertion that the PCRA court abused its discretion in dismissing Appellant's PCRA petition without a hearing, followed by undeveloped claims of ineffective assistance of counsel. *See* Appellant's Brief at 15-17. Appellant has failed to develop an argument in support of his claim. Accordingly, Appellant's challenge to the PCRA court declining to hold a hearing is waived. *See Hand*, 252 A.3d at 1166.

In his second issue, Appellant argues that trial counsel and appellate counsel were ineffective. *See* Appellant's Brief at 17. Appellant first argues that trial counsel was ineffective for failing to call Bowser, his mother, as a witness at the suppression hearing and at his trial. *See id.* at 19-23. Appellant contends that Bowser possessed information material to his defense, and her testimony would have raised a reasonable doubt and compelled his acquittal. *See id.* at 19. Specifically, Appellant claims that trial counsel should have called Bowser as a witness at the suppression hearing because she would have testified that Appellant had a privacy interest in her house. *See id.* at 20. Appellant also contends that trial counsel should have called Bowser as a witness at trial because she would have testified that Appellant came to her house and stayed overnight many times, and this would cast doubt on when Appellant's DNA was deposited on sheets. *See id.* at 20-22. Further, Appellant argues that Bowser could have clarified that Appellant went by the name Matthew Miller, rather than Jason Lowery. *See id.* at 22-24.

In order to satisfy the prejudice prong of the test for ineffective assistance of counsel for failing to call a potential witness,[7] our Supreme Court has instructed that the PCRA petitioner must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the

_____

[7] *See Sandusky*, 203 A.3d at 1043 (enumerating the three-pronged test for ineffective assistance of counsel).

existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Wantz***, 84 A.3d 324, 331 (Pa. Super. 2014) (citations omitted). "Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense." ***Commonwealth v. Williams***, 141 A.3d 440, 460 (Pa. 2016) (citation and quotation marks omitted).

Here, the PCRA court addressed Appellant's argument concerning trial counsel's failure to call Bowser as a witness as follows:

> [Appellant] claims that trial counsel was ineffective for not calling his mother, Joyce Bowser, as a witness at the pretrial suppression hearing to demonstrate his reasonable expectation of privacy in her home. He contends that trial counsel was further ineffective for failing to call her at trial, where she would have testified that [Appellant] often visited her home and had sexual encounters with women there, raising a reasonable doubt regarding when his semen was deposited on the bed sheet. [Bowser] would also testify that [Appellant's] real name was Matthew Miller instead of Jason Lowery. [However,] Bowser's proposed testimony would not change the outcome of either the suppression hearing or trial, and trial counsel was therefore not ineffective for failing to present her as a witness.
>
> *    *    *
>
> [Appellant] cannot show that he was prejudiced by the absence of Bowser's testimony. First, with regard to the motion to suppress, [Appellant] alleges that [Bowser's] testimony would have established that [Appellant] had a reasonable expectation of privacy in her home. However, the search of her home was conducted pursuant to a search warrant supported by probable cause, and [Appellant's] motion to suppress contested the validity

- 10 -

of that search warrant on the grounds that it was over-broad. Because testimony regarding [Appellant's] expectation of privacy in Bowser's home would have been inconsequential to determining whether the warrant justifying the search of that home was valid, [Appellant] cannot show a reasonable probability that the motion to suppress would have been granted had Bowser testified.

Moreover, [Appellant] did not have a reasonable expectation of privacy in [Bowser's] home. At trial, the victim testified that [Appellant] did not have a bed in the house on Ruscomb Street and that the victim and her two younger sisters slept in the middle bedroom on the second floor. On the night of the sexual assaults, the victim had to unlock the front door of the home for [Appellant] to enter the house after [Bowser] went to sleep. Similarly, the victim's mother testified that more than twice a week for over a year, she visited the home on Ruscomb Street. She testified that [Appellant] did not live there and that she never saw him there. In addition, when police executed the search warrant at the Ruscomb Street home, owned by [Bowser], on June 18, 2008, they did not come into contact with [Appellant].

Second, [Appellant] alleges that Bowser would have testified at trial that he sometimes slept with female friends at her house, thus raising doubt as to when his semen was deposited on the victim's bedsheets. However, the victim's testimony alone was sufficient to find [Appellant] guilty, and the evidence that DNA from them both was present on the [victim's] bedsheets was corroborative of the victim's testimony. *See Commonwealth v. Cody*, 584 A.2d 992, [993] (Pa. Super. 1991) ("In a prosecution for sex offenses, a verdict may rest on the uncorroborated testimony of the victim"). In any event, two forensic scientists who testified for the Commonwealth conceded on cross-examination that it could not be determined when [Appellant's] semen was deposited on the sheet, how long it had been there, or whether the victim's skin cells were deposited on the sheet at the same time as [Appellant's] sperm cells. Nevertheless, Bowser's proposed testimony that [Appellant] slept with "female friends" in her home in the past would have paled in comparison to the forensic scientist's testimony that the bedsheet contained a mixture of DNA only from [Appellant] and the victim. Accordingly, [Appellant] cannot show that he was prejudiced by the absence of Bowser's testimony.

Third, [Appellant] alleges that Bowser would have testified at trial that he visited her house often, without which he claims permitted

the adverse inference from the victim's testimony that the only reason he arrived there that night was to assault her. He also contends that [Bowser's] testimony would have clarified whether his "real" name was Jason Lowery or Matthew Miller. However, [Appellant's] intent upon arrival at Bowser's house was immaterial to establishing any element of the crimes he committed once inside the home. Moreover, [Appellant] does not explain what adverse inference could be derived from any confusion regarding his actual name. Even if confusion about his name could have caused some negative inference, the trial court explained to the jury that discrepancies between individuals' birth names and names on cases are innocent mistakes and specifically instructed the jury "to not, in any way, draw any inference adverse to [Appellant] from the fact that we're now, for the first time, indicating that his true name is Matthew Miller." N.T. 6/22/2010 at 43. The jury is presumed to have followed the trial court's instructions. *See Commonwealth v. Tedford*, 960 A.2d 1, 37 (Pa. 2008). Finally, [Appellant] fails to demonstrate prejudice. The victim's detailed and compelling testimony alone was sufficient to convict [Appellant] of the charged offenses. The evidence regarding the victim's bed sheet that contained [Appellant's] sperm and the victim's skin cells was corroboration of her testimony and was not needed to convict him of the charged offenses. Moreover, the fact that [Appellant] was referred to by two names (Jason Lowery and Matthew Miller) was inconsequential at trial. Under these circumstances, [Appellant] cannot show a reasonable probability that the outcome of his trial would have been different if only trial counsel had presented [Bowser] as a witness. *See Commonwealth v. Cox*, 983 A.2d 666 (Pa. 2009) (trial counsel was not ineffective for failing to call witnesses where the appellant failed to establish that the absence of the testimony from the witnesses prejudiced him); *Commonwealth v. Bryant*, 855 A.2d 726, 748 (Pa. 2004) (dismissing without an evidentiary hearing the defendant's claim that trial counsel was ineffective for failing to call witnesses where the defendant failed to show that the absence of the witnesses' testimony prejudiced him).

PCRA Ct. Op., 8/18/23, at 6-9 (some citations omitted and formatting altered).

After review, we discern no error of law and conclude that the PCRA court's conclusion is supported by the record. *See Sandusky*, 203 A.3d at 1043. We agree with the PCRA court that Appellant failed to establish that but for trial counsel's failure to call Bowser as a witness, the results of the proceedings would have been different. *See id.* at 1044. For these reasons, Appellant is not entitled to relief on this claim.

Next, Appellant argues that trial counsel was ineffective for failing to move for "arrested judgment." *See* Appellant's Brief at 24. Specifically, Appellant contends that search warrant was not signed and that the affidavit of probable cause supporting the search warrant bore two different seals. *See id.* at 24-28. Appellant "suggest[s] that some sort of governmental misconduct has taken place[,]" and he contends that trial counsel was ineffective for failing to move for an arrest of judgment.[8] *See id.* at 24-30.

Our Rules of Criminal Procedure provide: "Under extraordinary circumstances, when the interests of justice require, the trial judge may,

_____

[8] The Commonwealth argues that Appellant's challenge to the absence of a signature on the search warrant was raised for the first time in Appellant's Brief, and therefore, it is waived on appeal. *See* Commonwealth's Brief at 14-15. After review, we disagree. The record reflects that Appellant first challenged the lack of a signature on the search warrant in his *pro se* PCRA petition. *See Pro Se* PCRA Pet., 9/14/14, at 4K-4N. Further, in Appellant's amended and counseled PCRA petition, Appellant asserted that the search warrant had no signature. *See* Am. PCRA Pet., 7/13/16, at 29-31. In the supplemental PCRA petition, filed after the first remand, Appellant again identified this issue. *See* Suppl. PCRA Pet., 5/4/22, at 13-15. Accordingly, we decline to find waiver on this basis.

before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial." Pa.R.Crim.P. 704(B)(1).

> [I]n order for a trial court to properly grant the motion . . . to arrest judgment on the basis of insufficient evidence, it must determine, after accepting all of the evidence it chooses to believe, and all reasonable inferences therefrom upon which the verdict could possibly have been based, that such evidence and such inferences would, nonetheless, be insufficient as a matter of law to find the defendant guilty beyond a reasonable doubt of the crime charged.

***Commonwealth v. Johnson***, 631 A.2d 639, 642 (Pa. Super. 1993) (*en banc*) (citations and emphasis omitted).

Here, the PCRA court addressed this issue as follows:

> Trial counsel was not ineffective for not filing a meritless motion for arrested judgment at or before sentencing. [Appellant] claims that trial counsel was ineffective for not filing a motion for "arrested judgment" at or before sentencing because the bail commissioner's seal on the affidavit of probable cause for the search warrant presented at the motion to suppress hearing was different from the seal present on the affidavit attached to his pre-sentence investigation report. However, the affidavits in question pertain to [Appellant's] arrest warrant, not the search warrant. In any event, [Appellant] claims that "the only inference to be drawn from the different seals on the same document is that some sort of government misconduct has taken place." This claim is based on pure speculation and does not entitle him to relief.
>
> ***See Commonwealth v. Pierce***, 786 A.2d 203 (Pa. 2001) (speculation cannot support a claim of ineffective assistance of counsel); ***Commonwealth v. Pursell***, 724 A.2d 293 (Pa. 1999) ("Claims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary"); ***Commonwealth v. Morris***, 684 A.2d 1037, 1045 (Pa. 1996) (speculative claims of ineffectiveness should be summarily rejected). Accordingly, the PCRA court properly dismissed [Appellant's] claim on its merits.

- 14 -

PCRA Ct. Op., 8/18/23, at 9.

Following our review of the record, we conclude that Appellant has failed to establish how the alleged defects in the affidavits or warrant would established a reasonable likelihood that a motion for arrest of judgment would have been successful. **See Sandusky**, 203 A.3d at 1043. As we have noted, a prior panel of this Court concluded that Appellant had not been afforded the opportunity to amend his PCRA petition to include documents supporting this claim.[9] **See Lowery**, 2021 WL 5232423, at *8. Following the first remand, Appellant filed a supplemental PCRA petition and attached copies of the affidavit of probable cause supporting the arrest warrant and a single page of a copy of the search warrant. **See** Suppl. PCRA Pet., 5/4/22, at Appendix B.

With respect to the search warrant, Appellant is correct that the copy of the search warrant appended to his supplemental PCRA petition does not bear the issuing authority's signature. **See id.** However, the document specifically states that the search warrant contained additional pages, yet there are no additional pages attached or included in Appellant's supplemental PCRA petition. We agree with the PCRA court that Appellant's argument is purely speculative. Appellant cannot establish that the search warrant lacked a signature, and Appellant has not shown that counsel was ineffective for failing to move for an arrest of judgment on this basis or that a motion for arrest of

---

[9] The original affidavit of probable cause and search warrant are not in the certified record.

judgment would have been successful. Accordingly, Appellant has not established prejudice. **See Sandusky**, 203 A.3d at 1043-44; **see also Pursell**, 724 A.2d at 311.

Appellant also attached copies of the affidavit of probable cause supporting the arrest warrant to his supplemental PCRA petition. **See** Suppl. PCRA Pet., 5/4/22, at Appendix B. Appellant is correct that there are two copies of the affidavit, and Appellant is also correct that these copies are different as each has a distinct seal: one copy bears the stamp of the seal of the City of Philadelphia; the other copy has a stamp with the seal of the Philadelphia Municipal Court. **See id.** However, Appellant has not established how trial counsel was ineffective for failing to move for an arrest of judgment on this basis, and Appellant has not established that the discrepancy in the stamps on these copies would have resulted in a successful motion for arrest of judgment.[10] Therefore, Appellant's argument is speculative, and he has not established prejudice. **See Sandusky**, 203 A.3d at 1043-44; **see also Pursell**, 724 A.2d at 311.

---

[10] Regardless of the validity of Appellant's claims concerning the search warrant, we cannot conclude that there is a reasonable likelihood that a motion for arrest of judgment would have been successful because the testimony of the victim alone in a sex crime case of this nature would have been sufficient to convict Appellant. **See Commonwealth v. Davis**, 650 A.2d 452, 455 (Pa. Super. 1994) (stating that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses" (citations omitted)). Therefore, even if the search warrant was invalid, we cannot conclude that Appellant would be able to prove prejudice. **See Sandusky**, 203 A.3d at 1043-44; **see also Pursell**, 724 A.2d at 311.

- 16 -

After review, we agree with the PCRA court's conclusion that Appellant's claim of government misconduct is pure speculation, and the PCRA court properly denied Appellant's PCRA petition. *See* PCRA Ct. Op., 8/18/23, at 9; *Pursell*, 724 A.2d at 311 (stating that "[c]laims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary; namely, that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different" (citation omitted)). Accordingly, Appellant is not entitled to relief on this claim.

Next, Appellant argues that appellate counsel was ineffective for failing to raise "certain issues" on appeal. Appellant's Brief at 30. He contends that appellate counsel was ineffective for failing to raise on direct appeal that the trial court recharged the jury after deliberations began, the Commonwealth improperly amended the criminal complaint, the affidavit of probable cause was based on governmental misconduct, and that false and misleading information introduced at sentencing influenced Appellant's sentence. *Id.*

The Commonwealth responds that Appellant's claims regarding recharging the jury, amending the complaint, and that misleading information was introduced at sentencing were previously litigated. *See* Commonwealth's Brief at 17 (citing 42 Pa.C.S. § 9543(a)(3); *Lowery*, 2021 WL 5232423). We disagree. A prior panel of this Court explained that in light of its order for remand, these claims specifically involving appellate counsel's alleged ineffectiveness were not ripe for review at the time of the prior disposition.

*See Lowery*, 2021 WL 5232423, at \*9. Accordingly, we do not find that these claims were previously litigated.

However, we conclude that each of Appellant's claims concerning appellate counsel's alleged ineffectiveness are undeveloped and merely conclusory statements. As such, we find Appellant's claims of appellate counsel's alleged ineffectiveness are waived. *See Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (citing Pa.R.A.P. 2119); *see also Fears*, 86 A.3d at 804; *Hand*, 252 A.3d at 1166. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim[, and] this Court will not become counsel for an appellant and develop arguments on an appellant's behalf." *Samuel*, 102 A.3d at 1005 (citations omitted).[11]

Finally, Appellant contends that the cumulative prejudicial effect of the foregoing errors denied him effective assistance of counsel. *See* Appellant's Brief at 31. This claim is completely undeveloped, and on that basis, we

---

[11] In any event, because Appellant's underlying governmental misconduct claim is merely speculative, Appellant is not entitled to relief because he failed to establish prejudice. *See Pursell*, 724 A.2d at 311; *Khalil*, 806 A.2d at 421-22 (stating that "counsel will not be deemed ineffective for failing to pursue a meritless issue[, and] if the prejudice prong . . . is not met, the claim may be dismissed on that basis alone" (citations omitted and formatting altered)).

conclude that it is waived.[12] **See Samuel**, 102 A.3d at 1005; **see also Fears**, 86 A.3d at 804.

After review, we conclude that the PCRA court's determination is supported by the evidence of record and free of legal error. **See Sandusky**, 203 A.3d at 1043. Therefore, Appellant is not entitled to relief. For these reasons, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2024

_____

[12] Moreover, because we conclude that Appellant is not entitled to relief on any of his preceding claims of error, no relief is due on his cumulative claim. **See Commonwealth v. Saylor**, 308 A.3d 869, 879 (Pa. Super. 2024) (stating that "[n]o number of failed claims may collectively warrant relief if they fail to do so individually" (quoting **Tedford**, 960 A.2d at 56)), *appeal denied*, 321 A.3d 863 (Pa. 2024).