2024 PA Super 9

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES MICHAEL SAYLOR | : | |
| | : | |
| Appellant | : | No. 175 MDA 2023 |

Appeal from the PCRA Order Entered January 3, 2023
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005285-2018

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY PANELLA, P.J.:                **FILED: JANUARY 18, 2024**

James Saylor appeals the York County Court of Common Pleas' order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546, following a hearing. Saylor argues the PCRA court erred by finding his trial counsel was not ineffective in the way counsel handled the request for self-defense instructions at Saylor's jury trial.  The trial court eventually refused to give instructions on self-defense. In particular, Saylor asserts counsel was ineffective for: failing to object to the court's references to a preponderance of the evidence standard when denying his request to charge the jury on self-defense; failing to provide the court with the statutory definition of "criminal activity" in support of his request that the court give a castle doctrine instruction; and failing to object to the instructions

_____

[*] Retired Senior Judge assigned to the Superior Court.

the court ultimately gave to the jury which did not include self-defense instructions. In making these claims, Saylor repeatedly emphasizes that a video capturing the fatal shooting underlying his convictions, which was played at trial and at the PCRA hearing, provided evidence from which the jury could have determined he acted in self-defense and therefore supported the giving of a self-defense charge. As we conclude the PCRA court did not err in finding Saylor failed to establish counsel was ineffective, we affirm.

The Commonwealth charged Saylor with the shooting death of Chad Merrill. At trial, Saylor did not contest that he shot and killed Merrill. **See** Appellant's Brief at 7. Instead, his defense involved a combination of voluntary intoxication and self-defense claims. **See id.**

In order to give context to Saylor's challenges to trial counsel's representation as it relates to the request for self-defense instructions, we provide the following factual and procedural history. In the early morning hours of July 21, 2018, Saylor went to the Red Rose Bar in York County after spending the afternoon and evening of July 20, 2018, drinking a copious amount of alcohol. Once inside the Red Rose, Saylor repeatedly called another patron in the bar, Jerrell Grandison-Douglas, a racial slur. Staff escorted Saylor out of the bar, at which point the PCRA court stated that:

> Video surveillance [from outside the bar] captured [Saylor] firing his gun [which he had on his person] towards the Red Rose as he walked towards his vehicle. [Douglas's friend, Chad Merrill] exited the Red Rose and began to approach [Saylor's] vehicle. [Saylor] shot and killed Merrill as he approached the vehicle. While attempting to flee from the scene, [Saylor] struck another vehicle.

PCRA Court Opinion, 1/3/2023, at 2 (unpaginated).

Based on this incident, Saylor was charged with, *inter alia*, first-degree murder, harassment, ethnic intimidation, and recklessly endangering another person ("REAP"). The matter proceeded to a jury trial.

At trial, the Commonwealth presented 20 witnesses, including Jerrell Grandison-Douglas. The Commonwealth also presented as a witness Paul Sowers, the driver of the vehicle Saylor ran into as he left the scene after shooting Merrill.

Douglas testified Saylor, whom he had never met, began hurling racial slurs at him right after Douglas entered the Red Rose at approximately 12:45 a.m. on July 21, 2018. *See* N.T., 9/23/2019, at 146-147. According to Douglas, he tried to defuse the situation by offering to shake Saylor's hand and buy him a drink, but Saylor refused. *See id.* at 151. Douglas said Saylor called him a racial slur at least five or six times. *See id.* at 155.

Douglas testified that his friend, Chad Merrill, whom Douglas did not know was in the bar, tapped Douglas on the shoulder and when Douglas turned back around, Saylor had been removed from the bar. *See id.* at 151-152. According to Douglas, he and Merrill had a brief conversation about the incident as well as Merrill's family, and then Merrill told Douglas he was going outside to his truck. *See id.* at 154. Douglas testified he told Merrill he did not have to go outside to talk to Saylor on Douglas's behalf, but Merrill said he was going to his truck. *See id.* at 153, 181, 183. Douglas assumed Merrill was

- 3 -

going out to smoke. *See id.* at 181. Merrill left the bar, at which point he was shot.

Paul Sowers witnessed the shooting. Sowers testified he was a driver for Uber and was picking up a customer at the Red Rose on July 21st. After he drove into the parking lot of the bar, Sowers stated that a truck pulled up head-on in front of his car as well as an individual standing in the parking lot. Sowers saw the "guy [standing there] take a half step [towards the truck and turn his head] like he was listening." *Id.* at 191, 192-193. Sowers then heard the crack of a gun and saw the individual drop to the ground. *See id.* at 193.

The truck backed up into his car, and then did so again, before driving away. *See id.* at 192. Sowers testified it all happened very quickly. The Commonwealth played the video surveillance from the bar's parking lot capturing these events during Sowers' testimony. *See id.* at 194-197.[1]

Saylor testified in his own defense about the events from July 20 to July 21, 2018. He testified he started drinking around one p.m. on July 20th, and he continued to drink at his and then his cousin's house. According to Saylor, he did not remember anything after his cousin's house. *See* N.T., 9/25/2019, at 641-646. He testified he went to the Glad Crab Bar in York County, but he does not remember driving or being there. *See id.* at 646-647. He claimed he

_____

[1] There were several videos played at trial. The only video at issue in this appeal is the video surveillance of the Red Rose Bar's parking lot capturing the shooting; therefore, any reference in this memorandum to "the video" is referring to this particular video.

did not remember going to the Red Rose or any of the events at the Red Rose. *See id.* at 648-649. Saylor also testified he started carrying his gun in his waistband around one p.m. on July 20. *See id.* at 653-654.

At the close of testimony, counsel and the court discussed the charge to be given to the jury. Defense counsel asked the court to instruct the jury on self-defense. Court recessed for the day and during the charge conference the following day, defense counsel argued in tandem that the jury should be given both a general self-defense charge and a charge on the castle doctrine.

The court advised counsel that before it would give self-defense instructions to the jury, there had to be a preponderance of the evidence that Saylor acted in self-defense, and it questioned what the evidence was to support the instructions. *See* N.T., 9/26/2019, at 720-721. In support of his claim that the instructions should be given, defense counsel maintained several times that the jury could infer from the video that Saylor had acted in self-defense. The Commonwealth, meanwhile, argued the video clearly showed Saylor did not act in self-defense.

The court and the parties watched the video again, with the parties arguing their respective positions. The court then denied counsel's request to give the jury self-defense instructions, explaining:

> I'm looking at the three things that … I have to find before [a self-defense instruction] can go to a jury. I don't find that in this case.
>
> Specifically, to establish a defense of self-defense, it must be shown that the slayer was free from fault or provoking or

continuing the difficulty, which resulted in the slaying. We have no evidence one way or another in that because your client claims no memory.

That the slayer must have reasonably believed that he was in imminent danger of death and great bodily harm and that there was necessity to use such force in order to save himself therefrom.

Again, we have no evidence of that because your client claims no memory that he was in fear of imminent danger or great bodily harm.

And that the slayer did not violate any duty to retreat and avoid the danger.

I think I agree with the Commonwealth, he had plenty of opportunities to avoid that situation. So, without evidence of those elements, it doesn't go to the jury. The instruction does not go to the jury.

*Id.* at 739-740. The court then added that it was also denying counsel's request for the castle doctrine instruction as it didn't find any evidence to support such an instruction, "particularly having reviewed the video at least three more times this morning." *Id.* at 740.

Following its instructions to the jury, the court asked counsel if there were any exceptions to the charge and neither counsel lodged an exception. The jury found Saylor guilty of first-degree murder, harassment, ethnic intimidation, REAP and accidents involving damage to an attended vehicle.

The trial court held a sentencing hearing and sentenced Saylor to life imprisonment for the first-degree murder conviction. It also sentenced Saylor to lesser terms of imprisonment for the harassment, ethnic intimidation and

- 6 -

REAP convictions, and a 12-month probationary term for the accidents involving damage to an attended vehicle conviction.

Saylor filed a notice of appeal and continued to be represented by his trial counsel throughout his direct appeal. In his Pa. R.A.P. 1925(b) statement, Saylor claimed the trial court erred in refusing to give the justification defenses. The court, in its responsive opinion, reiterated its position that it had not given the instructions because "there was simply no evidence presented at trial supporting a jury instruction for justification." Trial Court Opinion, 2/13/2020, at 30.

On appeal, this Court also rejected Saylor's claim that the trial court erred by failing to give the charges on justification. *See Commonwealth v. Saylor*, 2020 MDA 2019 (Pa. Super. filed March 2, 2021) (unpublished memorandum). However, we did so on the basis that Saylor had waived the issue given that counsel had not noted any exception to the jury charge after the court read the instructions to the jury and asked counsel for any exceptions to those instructions. *See id.* This Court also rejected the other claims raised by Saylor on appeal and affirmed his judgment of sentence. *See id.*

Saylor filed a timely *pro se* PCRA petition. Counsel was appointed and filed an amended PCRA petition, raising several claims of counsel's ineffectiveness as it related to the trial court's refusal to give self-defense instructions. The PCRA court, the same court which presided over Saylor's jury

trial, held a hearing on the petition. During the hearing, trial counsel testified, and the video was once again played. Saylor's PCRA counsel clarified that the relevant portion of the video was from two minutes and four seconds to two minutes and 26 seconds (22 seconds). *See* N.T., 9/22/2022, at 36-37.

The PCRA court issued an order denying the petition on January 3, 2023, along with a comprehensive opinion explaining its reasons for the denial. Saylor filed a timely notice of appeal from the court's order. He complied with the court's order to file a Pa. R.A.P. 1925(b) statement, once again raising several ineffectiveness claims related to trial counsel's request for the justification instructions.

Our review of an order dismissing a PCRA petition is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. *See Commonwealth v. Shaw*, 217 A.3d 265, 269 (Pa. Super. 2019). Although we give great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record, we apply a *de novo* standard of review to the PCRA court's legal conclusions. *See Commonwealth v. Benner,* 147 A.3d 915, 919 (Pa. Super. 2016).

As noted above, Saylor raises claims of trial counsel's ineffectiveness on appeal. Counsel is presumed to have been effective. *See Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and prevail on a claim of ineffectiveness, Saylor must establish

that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for their conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different. *See id.* As is true for all petitioners, Saylor's "failure to prove any one of the three prongs results in the failure of [his] claim." *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011) (citation omitted).

Saylor first claims counsel was ineffective for failing to object to the court's use of a preponderance of the evidence standard when refusing to issue a self-defense charge. He argues the proper standard requires the defendant to show only that there is some evidence to support the elements of a self-defense claim before the court must instruct the jury on a requested self-defense instruction.

Saylor maintains there was some evidence to support a self-defense charge at his trial, namely the video of the shooting. To be sure, Saylor classifies the video as "the most important piece of evidence at trial," and then goes on to reference the video as least a dozen more times in his discussion of this claim alone. Appellant's Brief at 33, 34-43. He avers the video supports a self-defense claim because during the brief interaction between Saylor and Merrill at Saylor's driver-side window, while "nobody knows what [Merrill] did," the jury may have surmised that Merrill was "trying to get into [Saylor's] car."

*Id.* at 33-34 (citations to notes of testimony omitted). This claim does not offer any basis for relief.

As an initial matter, perhaps the most fundamental problem with Saylor's claim is his failure to ensure the video, on which he so heavily relies not only in this claim but in his later claims, was made a part of the certified record that was sent to this Court. It was not. Of course, it is the appellant's burden to ensure the certified record contains that which is necessary for this Court to properly resolve the issues raised on appeal. *See Commonwealth v. Midgley*, 289 A.3d 1111, 1120 (Pa. Super. 2023). This seems to be especially critical for an exhibit the appellant repeatedly cites to as the main support for his claims, and one he asserts was mischaracterized by the lower court.

This Court has found a claim waived when the appellant has not met his burden of furnishing the court with a certified record that contains the necessary content to resolve his claims. *See id.* However, we decline to do so here. The exhibit list in the electronic record sent to this Court specifically lists the video in question as an exhibit, and we therefore find it was not unreasonable for counsel to presume the clerk of court was transmitting the video to this Court along with the other exhibits listed in that document. *See Commonwealth v. Bongiorno*, 905 A.2d 998, 1001 (Pa. Super. 2006) (*en banc*) (stating "[w]hether a default with regard to the contents of the certified

record warrants a finding of waiver is a question that must be evaluated under the particular facts and circumstances of a specific appeal").

And critically, upon informal inquiry by our Prothonotary, the lower court was able to locate the video exhibits played at trial and transmit them to our Court, including the video relevant to this appeal. The certified record was supplemented accordingly. We therefore turn to the merits of Saylor's first claim regarding the effectiveness of trial counsel's representation when unsuccessfully arguing the court should instruct the jury on the self-defense instructions.

Here, the PCRA court rejected Saylor's claim on grounds that he failed to establish arguable merit for the claim. When a defendant requests a self-defense instruction, the trial court must give the instruction only if there is some evidence, from whatever source, to support such an instruction. **See Commonwealth v. Mouzon**, 53 A.3d 738, 740 (Pa. 2012) (citation omitted); **Commonwealth v. Washington**, 692 A.2d 1024, 1029 (Pa. 1997) (stating that jury instructions on self-defense are not warranted where the evidence does not support a finding of self-defense).

Saylor complains the trial court did not apply this standard and instead, improperly applied a preponderance of the evidence standard as it used that terminology several times when discussing the requested justification charges. In rejecting this claim, the PCRA court stated:

> At the charge conference, defense counsel argued a number of different instructions somewhat simultaneously. The first

- 11 -

reference, by this court, to preponderance of the evidence dealt with provocation. If this court misspoke and said it again during the lengthy discussion of the justification instruction, this court also made it clear that there was **no** evidence to support the instruction.

PCRA Court Opinion, 1/3/2023, at 10 (unpaginated) (emphasis in original).

The record supports the court's representation that it denied Saylor's request for self-defense instructions on the basis that there was no evidence to warrant those instructions, which reflects the proper standard for determining whether self-defense instructions are warranted. We therefore find no error in the court's determination that there is no arguable merit to this claim.

Even if counsel should have objected to the court's references to a preponderance of the evidence standard, we also find no error in the PCRA court's conclusion that Saylor failed to show he was prejudiced by counsel's conduct. To that end, the court stated it would not have given the self-defense instructions even had counsel specifically objected to the challenged terminology used because the court found there was no evidence at all to warrant that instruction:

> To summarize, there was no evidence presented as to [Saylor's] state of mind or what an individual's state of mind would have been had they been in the position that [Saylor] found himself. There was no evidence to conclude that anyone in the Red Rose restaurant or parking lot, other than [Saylor] had a weapon. There was no evidence of a fight or altercation between [Saylor] and the victim. Nor was there any evidence, from which one could reasonably infer, that it was then and there necessary for [Saylor] to use deadly force to repel an attack being perpetrated against him by the victim.

- 12 -

*Id.*

Saylor takes issue with the PCRA court's findings. He argues he was prejudiced by counsel's actions because had counsel objected to the preponderance of the evidence standard and pointed out that the correct standard was whether there was some evidence Saylor had acted in self-defense, the video was the evidence that would have supported the court charging the jury on self-defense. He claims the jury could have inferred from the video that Saylor only fired at Merrill because he perceived him to be approaching his truck window in order to enter his truck. The PCRA court explicitly confronted this assertion in its opinion:

> Defense counsel promoted a video of the exterior of the Red Rose to support his request for the instruction. However, despite repeated reviews of the video, this court found no evidence that would justify a claim of fear of death or serious bodily harm.
>
> The video demonstrates the victim exiting the Red Rose and walking through the parking lot as [Saylor] pulls out of his parking space. The video does not display any weapon on the person of the victim or that he makes any gesture towards [Saylor]. Without any testimony from [Saylor], there is only speculation by counsel as to what occurred but **no evidence** that the victim took any action towards [Saylor] that would put him in imminent danger of death or serious bodily injury, such that it was necessary to use deadly force to stop the victim.

*Id.* at 8-9 (unpaginated) (citations omitted) (emphasis in original) (single paragraph divided into two).

We conclude the supplemented record supports the court's findings. The quality of the video is far from good; Saylor calls it "grainy." Appellant's Brief

at 33. There is also no audio. However, our review of the relevant portion of the video, including the 22 seconds identified by counsel at the PCRA hearing, does not show anything on which we could base a finding that the court erred in concluding the video did not provide any evidence to support a claim of self-defense.

We recognize that although Saylor primarily relies on the video as the evidence supporting a self-defense instruction, he also argues the fact that Merrill's blood was found on the exterior of Saylor's truck and certain testimony by Douglas supported a self-defense instruction. As for the blood, Saylor completely fails to explain how this evidence supports his claim of self-defense, and that assertion is therefore waived. *See Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that arguments that are not sufficiently developed are waived).

As for Douglas's testimony, Saylor essentially claims Douglas's testimony that Merrill "does handle stuff," and "likes to solve things," suggests Merrill went outside the bar to confront Saylor. Appellant's Brief at 36-37 (citation to notes of testimony omitted). We do not agree.

In the first place, Douglas testified he did not think Merrill said anything to him indicating he was going outside to handle Saylor on the night in question. *See* N.T., 9/23/2019, at 182. He also testified he presumed Merrill was going outside to his truck in order to smoke, not to confront Saylor.

Moreover, Douglas later testified what he meant when he testified that Merrill likes to handle stuff for other people:

> He is a peacemaker. He doesn't like confrontation. If there is some issue, he likes to have everyone happy. He likes to make sure everything is cool. I don't know if his relationship with Saylor, if they knew each other or not. He didn't want any tension.

*Id.* at 187. He then clarified he did not "at all" mean by his testimony that Merrill was going to go handle Saylor for him. *Id.* Based upon the record, we cannot agree with Saylor that this testimony supports a self-defense instruction.

Finally, we note the PCRA court also found that even if it "accepted counsel's speculation of the events that transpired in the parking lot, [Saylor] took no action to retreat, as he easily could have done," and which he was required to do in order to be entitled to an instruction on self-defense. PCRA Court Opinion, 1/3/2023, at 9; *see Commonwealth v. Brown*, 421 A.2d 660, 662 (Pa. 1980). The court observed in its opinion that Saylor was in a moving vehicle and Merrill was on foot, and also observed that Saylor had many opportunities to avoid the situation entirely. *See* PCRA Opinion, 1/3/2023, at 9; N.T., 9/26/2019, at 740. Again, we see no error in this conclusion. In conclusion, we see no error in the court's overarching determination that counsel was not ineffective for failing to object to the trial court's reference to a preponderance of the evidence standard given its finding that there was no evidence to support a self-defense charge. The trial court did not abuse its discretion in declining to give that charge to the jury.

- 15 -

In his second claim, Saylor argues counsel was ineffective for failing to supply the relevant definition of "criminal activity" contained in the castle doctrine, codified at 18 Pa. C.S.A. § 505, in support of his request that the jury be instructed on the castle doctrine. This claim also fails.

The castle doctrine is a "specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home [or occupied vehicle] before using deadly force as a means of self-defense." ***Commonwealth v. Childs***, 142 A.3d 823, 824 n.1 (Pa. 2016). To that end, Section 505(b)(2.1) provides in relevant part that a person is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself if (i) the person against whom the force is used is in the process of unlawfully and forcefully entering a dwelling, residence or occupied vehicle and (ii) the actor knows or has reason to know the unlawful entry is occurring. ***See*** 18 Pa. C.S.A. § 505(b)(2.1). This presumption does not apply if the actor is engaged in criminal activity. ***See*** 18 Pa. C.S.A. § 505(b)(2.2)(iii). Criminal activity, in turn, is defined in the statute as conduct which "is related to the confrontation between an actor and the person against whom force is used." ***See*** 18 Pa. C.S.A. § 505(d).

Here, when discussing whether it would instruct the jury on the castle doctrine, the court stated that it was not applicable because Saylor was engaged in criminal activity, namely drunk driving, when the shooting occurred. Saylor argued against the court's finding in this regard, specifically

stating that the criminal activity "has to be against the person the force is based upon." N.T., 9/26/2019, at 728; *see also id.* at 724 ("[Saylor] was not acting unlawful at that moment, Your Honor. Not when it concerns Mr. Merrill"). When asked to name the authority he was deriving this from, counsel responded "the Castle Doctrine itself." *Id.* at 728.

Saylor acknowledges that "counsel cited Section 505," but apparently faults him for not specifically quoting the statutory definition of criminal activity. Appellant's Brief at 46. In rejecting this claim as meritless, the PCRA court stated that counsel had effectively conveyed the definition of criminal activity and had referenced the fact that such a definition was located in the castle doctrine itself, which was the very "statute that was being debated." PCRA Court Opinion, 1/3/2023, at 12 (unpaginated). We see no error in the court's conclusion that this claim has no arguable merit.

Moreover, we add that Saylor's argument does not take into account the fact that the court also specifically found that there was no evidence that Merrill tried to forcefully enter Saylor's truck, and it would not be giving the instruction for that reason as well. *See* N.T., 9/26/2019, at 723, 733; PCRA Court Opinion, 1/3/2023, 13 (unpaginated) (stating that, after reviewing the video multiple times, the court did not find any evidence that the castle doctrine was appropriate). As we cannot conclude the PCRA court erred, this claim warrants no relief.

In his third issue, Saylor contends trial counsel was ineffective for failing to object to the absence of self-defense instructions from the charge ultimately given to the jury, thereby waiving the issue on direct appeal. However, as the PCRA court noted, the resolution of Saylor's first two issues demonstrate that Saylor has failed to establish the arguable merit or prejudice pertaining to this ineffectiveness claim. The trial court found, and we agree, that the trial court would not have given the instruction had counsel objected given that "the evidence did not support the instruction[s]." PCRA Court Opinion, 1/3/2023, at 14 (unpaginated). Saylor has simply failed to establish that even had counsel objected and preserved the issue, the trial court abused its discretion by declining to give the instructions.

For similar reasons, we also find no error in the PCRA court's rejection of Saylor's fourth and final claim that the cumulative effect of counsel's errors warrants relief. "[N]o number of failed claims may collectively warrant relief if they fail to do so individually." **Commonwealth v. Tedford**, 960 A.2d 1, 56 (Pa. 2008) (citation omitted). No relief is due.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 1/18/2024