**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DAVEN FORTH | : | |
| Appellant | : | No. 3311 EDA 2024 |

Appeal from the PCRA Order Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010653-2017

BEFORE: BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.: **FILED JANUARY 8, 2026**

Appellant Daven Forth appeals from the order dismissing his first Post Conviction Relief Act[1] (PCRA) petition. On appeal, Appellant argues that the PCRA court erred by dismissing his claims concerning trial counsel's ineffectiveness. We affirm.

A prior panel of this Court summarized the facts of this case as follows:

The facts, when viewed in the light most favorable to the Commonwealth as the verdict-winner, show that on May 8, 2017, Jeremy Irby ("Germ") met up with [Appellant], George Pinkney, Antonio Hester ("Tone"), and Rahsan Stinnett ("Poo-Rock") at the neighborhood park, then drove to [Tone's] house at 1823 Master Street in the City and County of Philadelphia. Once there[,] everyone was getting high [by] smoking marijuana. Without any provocation, [Appellant] pulled out a black handgun and shot . . . [Tone] in the back of the head, resulting in his immediate death . . . . [Appellant] then shot . . . Pinkney twice in the face. . . . Pinkney managed to get out of the house, where a neighbor seeing him covered in blood called 911. . . . [Tone's] girlfriend was just

---

[1] 42 Pa.C.S. §§ 9541-9546.

pulling up to [the] house when she saw Pinkney. After managing to somewhat compos[e] herself, she drove Pinkney to the hospital. Although Pinkney testified at trial that he did not know who shot him, in a statement to the police on July 21, 2017, he identified [Appellant] as the shooter. Moreover, Pinkney testified at [Appellant's] preliminary hearing that he saw Appellant shoot him[,] as well as the gun that [A]ppellant used. Prior to trial, [Pinkney] telephoned the assigned prosecutor leaving messages that he was afraid for his life[,] as well as that of his family[,] if he testified at trial against [Appellant]. . . . Irby also testified at the trial and [stated that,] although [he was] in the room when the shooting occurred[,] . . . he did not know who did the shooting. Irby likewise had given a statement to the police on September 6, 2017, wherein he was fearful of identifying the shooter[.]

*Commonwealth v. Forth*, 1378 EDA 2019, 2020 WL 3606406, at *1 (Pa.

Super. filed Jul. 2, 2020) (unpublished mem.) (quoting Trial Ct. Op., 10/4/19,

at 3-4) (some formatting altered and citations omitted).

The PCRA court summarized the procedural history of this matter as

follows:

Appellant was arrested on September 7, 2017, and charged with murder, attempted murder, aggravated assault, simple assault, recklessly endangering another person and two counts each of possession of an instrument of crime, firearms not to be carried without a license, and carrying firearms in Philadelphia. [Appellant] was bound over on all charges following a preliminary hearing on December 14, 2017. A jury was empaneled on November 26, 2018, [and] after trial, [the jury] convicted [Appellant] of first-degree murder, attempted murder, aggravated assault, carrying firearms in Philadelphia, carrying firearms without a license[,] and possessing an instrument of a crime.[2] On December 5, 2018, [Appellant] was sentenced to life without parole for the first-degree murder charge, a concurrent five to ten years' incarceration for attempted murder and one to two years concurrent for carrying a firearm in Philadelphia, carrying a

_____

2 18 Pa.C.S. §§ 2502(a), 901(a), 2702(a), 6108, 6106(a)(1), and 907(a), respectively.

- 2 -

firearm without a license, and possessing the instrument of a crime. A timely appeal was made to the Superior Court of Pennsylvania, who affirmed the judgment of sentence on July 2, 2020. [*Forth*, 2020 WL 3606406]. A petition for allowance of appeal was denied by the Pennsylvania Supreme Court on February 10, 2021. *Commonwealth v. Forth*, 237 EAL 2020[, 244 A.3d 1230 (Pa. 2021)].

A counseled PCRA petition was filed on [Appellant's] behalf with the prosecution filing a motion to dismiss on October 1, 2024. On October 21, 2024, a notice of intent to dismiss pursuant to [Pa.R.Crim.P.] 907 was sent to all parties and counsel with the petition being dismissed on November 14, 2024. [Appellant] timely appealed to the Superior Court.

PCRA Ct. Op., 1/30/25, at 1-2 (some formatting altered). Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises four issues, which we have reordered as follows:

1. Did the PCRA court err when it found that Appellant's constitutional rights under the Sixth and Fourteenth Amendment were not violated when counsel failed to timely object and request a mistrial after the prosecutor's closing and argue on direct appeal that the Commonwealth violated Appellant's Fifth Amendment rights under the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution by intentionally and repeatedly referring to Appellant's pre-arrest silence?

2. Did the PCRA court err when it found that Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article [I], [Section] 9 of the Pennsylvania Constitution were not violated by trial counsel's ineffective failure to timely object to improper argument by the prosecution that referred to evidence that was not of record and request a mistrial or a curative instruction?

3. Did the PCRA court err when it found that Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution were not violated by counsel's

- 3 -

ineffective[] failure to assert that the Commonwealth used coercion in order to impermissibly influence and pressure [] Appellant into making an unknowing and involuntary decision related to a plea.

4. Did the PCRA court err in not granting relief on the above claims and finding that their cumulative impact denied [sic] entitled Appellant to relief?

Appellant's Brief at 13-14 (some formatting altered).

In reviewing the denial of a PCRA petition, our standard of review

is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019)

(citations omitted and formatting altered). Further, we presume that a

defendant's counsel was effective. *See Commonwealth v. Turetsky*, 925

A.2d 876, 880 (Pa. Super. 2007). This Court has explained that

to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

- 4 -

The test for deciding whether counsel had a reasonable basis for his [or her] action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his [or her] client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he [or she] may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Sandusky*, 203 A.3d at 1043-44 (citations omitted and formatting altered).

**Pre-arrest Silence**

In his first claim, Appellant argues that his trial counsel was ineffective for failing to object and request a mistrial after the Commonwealth referred to Appellant's pre-arrest silence during closing arguments.[3] Specifically,

_____

[3] Appellant also argues that a Commonwealth witness, Detective Brian Peters, referred to Appellant's pre-arrest silence in his testimony, and Appellant's trial counsel failed to object. *See* Appellant's Brief at 23-25. The Commonwealth asserts that Appellant waived this issue because Appellant did not include it in his Rule 1925(b) statement or in his statement of questions involved in his appellate brief. *See* Commonwealth's Brief 12-13. After review, we agree with the Commonwealth. Appellant's issue concerning Detective Peters' testimony was not included in Appellant's Rule 1925(b) statement nor in Appellant's statement of questions involved. Accordingly, this issue is waived on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"), 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

- 5 -

Appellant refers to the Commonwealth's statement that after the shooting, although Appellant called his mother, who was a Philadelphia police officer, he did not report the shooting to the police department. *See* Appellant's Brief at 20-22.

The Commonwealth responds that the prosecutor's statements during closing were fairly made in response to Appellant's trial counsel's closing and were based on the evidence presented at trial. *See* Commonwealth's Brief at 10-11. The Commonwealth states that "the contested remarks were a direct (and entirely fair) response to the suggestion in [Appellant's trial] counsel's argument that [Appellant] had called the police—thus supposedly demonstrating [Appellant's] consciousness of non-guilt—because he had called his mother, who was a police officer." *Id.* at 12 (emphasis omitted). The Commonwealth contends that Appellant's trial counsel's discussion concerning the fact that Appellant telephoned his mother, a Philadelphia police officer, "suggested that a cold[-]blooded killer wouldn't call his mother after committing a shooting but that [Appellant] also called her because she's a Philadelphia police officer." *Id.* (citation and quotation marks omitted). The Commonwealth continues: "The implication was that because [Appellant's mother] was not only his mother but also a police officer, his calling her supported that he was only a witness to the killing rather than the perpetrator." *Id.* Accordingly, the Commonwealth contends that the prosecutor's statement was a fair response to Appellant's trial counsel's

argument, the statements were not improper, and Appellant's trial counsel was not ineffective for failing to object. ***See id.***

We review Appellant's claim under the following standard:

[A] claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

***Commonwealth v. Koehler***, 36 A.3d 121, 144 (Pa. 2012) (citations omitted and formatting altered).

Further, "[a] mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." ***Commonwealth v. Bracey***, 831 A.2d 678, 682 (Pa. Super. 2003) (formatting altered and citations omitted). "Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." ***Commonwealth v. Reid***, 259 A.3d 395, 429 (Pa. 2021) (citation omitted); ***Commonwealth v. Hogentogler***, 53 A.3d 866, 878 (Pa. Super. 2012)

(stating "the prosecutor may fairly respond to points made in the defense closing" (citations omitted)).

Moreover, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom . . . ." **Hogentogler**, 53 A.3d at 878 (citations omitted). "[T]he Commonwealth may utilize a defendant's silence, including pre-arrest silence, as fair response to a defendant's argument at trial." **Commonwealth v. Molina**, 104 A.3d 430, 447 (Pa. 2014) (Opinion Announcing the Judgment of the Court). "We will not find prosecutorial misconduct from comments based on the evidence or derived from proper inferences." **Commonwealth v. Scott**, 212 A.3d 1094, 1110 (Pa. Super. 2019) (citation omitted). "Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial." **Id.** (citation omitted).

Here, the record reflects that during the defense's closing statement to the jury, Appellant's trial counsel stated:

> Let's talk about circumstantial evidence. The Commonwealth talked about it in his opening. He may talk about it in his closing argument. And circumstantial evidence -- and His Honor will tell you -- can be enough to convict. So we don't have any reliable eyewitnesses. If we don't have any forensic evidence, sometimes circumstantial evidence can be enough. What's circumstantial evidence? In this case, there's circumstantial evidence that [Appellant], his cell phone records reflect that this man, this cold-blooded killer here, called his mom after the shooting, okay? He called his mom. I might call my mother too if she's a Philadelphia police officer after I witnessed a shooting. There's also evidence that his phone -- activity in his phone stopped after a certain time

- 8 -

after the shooting on the day of the shooting. Well, if I'm [Appellant], if I just witnessed a shooting by a friend of another friend, I might get rid of my phone too. I might be fearful of Poo Rock. I might be fearful of Tone's friends because people might think I have something to do with the shooting.

N.T. Trial, 12/3/18, at 40-41.

Subsequently, in its closing, the Commonwealth responded as follows:

Now, ladies and gentlemen, the judge told you [Appellant] has no obligation, no legal obligation to call the police, to call -- to go for help, nothing, no legal obligation to do that. What does a friend do? I couldn't tell my wife, look, I have no legal obligation to celebrate your birthday. I have no legal obligation to tell you I love you. I have no legal obligation to take you out and show you a good time. What does a husband do? What does a friend do?

Right now, you know that the friend, [Appellant], is not with the person he wants to blame this on. Somehow, he walked away. What does he do? Does he go back to check on George, check on Tone? Does he call 9-1-1? He called a cop. He called his mother. His mother is a police officer and he called her right after and spoke to her. She called him back and spoke to him. They didn't call the police.

So it was one of three scenarios that happens, one of three. Either [Appellant] called his mother after his friends were shot and said nothing about it. Hey, Mom. What's for dinner? I'm hungry. What time are you coming home? I miss you. He's just as cool and calm as he was walking down that street with Poo Rock behind him.

Or he calls his mother and says, hey, Mom. Somebody just shot George. George from up the block? Around the corner George? Yes. Call the police. Where are you? Where did this happen? Is he alive? We know that didn't happen because mom would have said that. She's a cop.

Well, he said, Mom, I murdered somebody. What should I do? Hold on. I'll call you back.

The middle one isn't likely, that he called his mom, told his mom that somebody else murdered somebody, and she didn't say anything. She's a cop. That's not likely. The first one was just

- 9 -

so cold. You don't give a damn. The third one is you told your mom you murdered somebody and your mom, being a mom, did something maybe she thought they would never do, but she loves you and did it anyway. I don't know.

What we do know is after the murder of his friend, he called his mother, who is a police officer. No police were notified from his mother or him. Is that what a friend would do? Is that what a friend would do or is that what a killer would do?

*Id.* at 67-69 (some formatting altered).

The PCRA court concluded that the Commonwealth's remarks were a fair response to Appellant's trial counsel's closing statement that Appellant called his mother after the shooting. *See* PCRA Ct. Op., at 9-10. The PCRA court stated that "[c]learly, the complained of section of [the] prosecutor's closing was a fair response to defense counsel's argument[,]" and the prosecutor's "remarks were not so inappropriate as to be prejudicial and were a fair response to the argument presented by defense counsel." *Id.* at 10.

After review, we conclude that the PCRA court's conclusions are supported by the record and free from legal error. *See Sandusky*, 203 A.3d at 1043. In his closing, Appellant's trial counsel specifically discussed the fact that after the shooting, the evidence revealed that Appellant called his mother. *See* N.T. Trial, 12/3/18, at 40-41. Appellant's trial counsel asserted that Appellant called his mother, who was a Philadelphia police officer, because Appellant had just witnessed a shooting and not because he was a cold-blooded killer. *See id.* The Commonwealth responded in its closing that Appellant's phone calls with his mother immediately after the shooting indicated that he committed the crimes rather than showing that Appellant

- 10 -

called his mother because he wanted to report the crime to the police. *See id.* at 67-69. Indeed, the Commonwealth noted that neither Appellant nor his mother notified the police department about the shooting. *See id.* at 68.

We agree with the PCRA court that the Commonwealth's closing remarks at were made in fair response to Appellant's trial counsel's statements and that therefore, Appellant's trial counsel was not ineffective for failing to object. *See* PCRA Ct. Op., at 9-10; *see also Reid*, 259 A.3d at 429-30 (explaining that trial counsel was not ineffective for failing to object where the prosecutor's statements constituted a fair response to the defendant's statements); *Molina*, 104 A.3d at 447. Further, the Commonwealth's remarks were based on the evidence and inferences derived from the evidence presented. *See Hogentogler*, 53 A.3d at 878. We conclude that the prosecutor's comments did not have the unavoidable effect of depriving Appellant of a fair trial or creating bias and hostility such that the jury could not return a true verdict. *See Koehler*, 36 A.3d at 144; *Bracey*, 831 A.2d at 682. For these reasons, we conclude that Appellant has failed to establish that his claim has arguable merit. *See Sandusky*, 203 A.3d at 1043-44. Accordingly, Appellant is not entitled to relief on this issue. *See id.*

**Hypotheticals**

In his second issue, Appellant again challenges the portion of the Commonwealth's closing where the prosecutor discussed Appellant calling his mother after the shootings. *See* Appellant's Brief at 40. Appellant argues that trial counsel was ineffective for failing to object when the prosecutor

referred to evidence that was not of record and failed to request a mistrial or a curative instruction. *See id.* Specifically, Appellant argues that the prosecutor referred to hypothetical situations concerning why Appellant may have called his mother. *See id.* at 41-48.

The Commonwealth argues that the challenged remarks were reasonable inferences from the evidence presented at trial, and the Commonwealth fairly responded to Appellant's trial counsel's closing statement. *See* Commonwealth's Brief at 15.

The PCRA court addressed this claim as follows:

> The prosecutorial closing was a fair and accurate response to defense counsel's argument and no objection by counsel would have been sustained. A review of the argument by the prosecutor show[s] that the prosecutor's comments in the context in which they were made did not prejudice the jury by preventing the jurors from weighing the evidence objectively and rendering a fair verdict, as it is entirely permissible for the prosecutor to respond to defense counsel's arguments, and present a vigorous argument making reasonable inferences based on the evidence. The evidence in this case was both compelling and substantial and it cannot be said that the unavoidable effect was to prejudice the jury, forming in their minds a fixed bias and hostility against [Appellant] keeping [the jury] from objectively weighing the evidence and rendering a fair verdict. As such this claim by [Appellant] is without merit.

PCRA Ct. Op., 1/30/25, at 12-13 (citations omitted).

After review, we conclude that the PCRA court's conclusions are supported by the record and free from legal error. *See Sandusky*, 203 A.3d at 1043. The record reflects that Appellant's trial counsel remarked during closing that Appellant may have called his mother after the shooting because

- 12 -

she was a police officer and asserted that it was reasonable for Appellant to call her after he witnessed a shooting. **See** N.T. Trial, 12/3/18, at 40-41. Specifically, Appellant's trial counsel stated: "In this case, there's circumstantial evidence that [Appellant], his cell phone records reflect that this man, this cold-blooded killer here, called his mom after the shooting, okay? He called his mom. I might call my mother too if she's a Philadelphia police officer after I witnessed a shooting." **Id.**

The record reflects that the Commonwealth responded by stating three possible scenarios of what the nature of Appellant's phone calls with his mother may have been: asking her benign questions; telling her he witnessed a shooting; or admitting to her that he committed the shooting and asking her what he should do. **See id.** at 67-70. In its closing, the Commonwealth asked the jury to infer from the evidence that Appellant's trial counsel's hypothetical scenario concerning why Appellant called his mother was not plausible. **See id.**

After review, we conclude that the prosecutor's comments did not have the unavoidable effect of depriving Appellant of a fair trial or create bias and hostility such that the jury could not return a true verdict. **See Koehler**, 36 A.3d at 144; **Bracey**, 831 A.2d at 682. The prosecutor's comments were made in fair response to Appellant's trial counsel's closing and were based on reasonable inferences derived from the evidence. **See Reid**, 259 A.3d at 429; **Scott**, 212 A.3d at 1110; **Hogentogler**, 53 A.3d at 878. For these reasons, we conclude that Appellant has failed to establish that his claim has arguable

merit. *See Sandusky*, 203 A.3d at 1043-44. Accordingly, Appellant is not entitled to relief. *See id.*

### Plea Coercion

In his third issue, Appellant argues that his trial counsel was ineffective for failing to object to the Commonwealth's use of coercion to pressure Appellant into making an unknowing and involuntary decision related to a plea. *See* Appellant's Brief at 32-34. Appellant states that his "rejection of the plea was not knowing, intelligent[,] and voluntary and was instead based on impermissible coercion." *Id.* at 34. Appellant contends that "[l]ess than 30 minutes before trial was to begin, Appellant was told that the Commonwealth had offered him a deal of 15 to 30 years. He was also told that if he didn't take the plea his mother was going to be charged with crimes related to this crime." *Id.* (citation omitted). "Appellant avers that [his trial] counsel was ineffective for failing to report to the [c]ourt that the detectives and prosecutor engaged in misconduct and were attempting to improperly influence the plea negotiations by using threats and coercion." *Id.* at 38 (citations omitted).

The Commonwealth responds that Appellant's claim that he was coerced **to accept** a guilty plea contradicts his statement on the record prior to trial where Appellant stated that he understood the plea offer, voluntarily **rejected it**, and instead chose to go to trial. *See* Commonwealth's Brief at 17. The Commonwealth also notes that while Appellant stated in his PCRA petition that he would support his accusations and supplement his PCRA petition with a

sworn statement from his mother verifying the alleged coercion to accept the plea, Appellant failed to provide an affidavit from his mother or anyone else, and he merely filed a statement from himself. *See id.* at 18 (citing Appellant's PCRA Pet., 4/30/22, at 17 n.2). The Commonwealth states:

> Presumably recognizing the impossibility of demonstrating that he was somehow prejudiced by supposedly being coerced **to accept** a plea offer that he in fact **rejected**, [Appellant] did not file the supplement with a supporting statement from [his] mother. Rather, two months later, [Appellant] filed a statement only from himself in which he made the illogical—and opposite—assertion that the Commonwealth presented him with a plea offer and then, within the same 30-minute time frame, improperly coerced him to **reject** it ("Affidavit/Declaration of [Appellant]" filed 6/6/2022). [Appellant] offered no explanation for the obvious material contradiction. His declaration specifically asserted that "if it had not been for those circumstances, I would have pled guilty." *Id.*

*Id.* at 18 (emphases in original). The Commonwealth concludes:

> Particularly in the absence of an explanation for the contradiction, the PCRA [court] properly concluded that [Appellant] had failed to allege genuine issues concerning any material fact warranting a hearing. *See* Pa.R.Crim.P. 907(1). [Appellant's] assertions were implausible on their face and also in significant tension with his own sworn representations that the terms of the plea offer had been explained to him by his attorney, that he understood them, and that he still wished to proceed to trial[.] (N.T. 11/26/18, 5-6).

*Id.* at 18-19.

The PCRA court addressed Appellant's claim of error as follows:

> [Appellant] next contends that counsel was ineffective for failing to assert that the Commonwealth improperly pressured and influenced him into making an unknowing and involuntary decision to reject the plea offer of fifteen to thirty years. The issue itself is convoluted. In his [April 30, 2022, PCRA] petition [Appellant] contends the prosecution coerced him to plead guilty.

- 15 -

> [Appellant's] affidavit [filed on June 6, 2022,] however claims the Commonwealth coerced him to reject the offer. [Appellant's Rule] 1925(b) statement does not clear up this confusion, merely contending the prosecution "used coercion in order to impermissibly influence and pressure [] Appellant into making an unknowing and involuntary decision related to a plea." ([Rule 1925(b)] Statement of Matters Complained of on Appeal, [12/14/24, at] 2). The credibility of such a claim is in serious question when [Appellant] cannot say whether the coercion complained of was to accept or reject the plea. Regardless, the claim is without merit. This court conducted an oral colloquy with [Appellant] prior to trial concerning the plea offer.[4] It was clear [Appellant] was aware of the offer [from] the prosecution[, which was] a plea to third[-]degree murder with a cap of fifteen to thirty years' incarceration[,] and [Appellant] wanted to proceed to trial. [Appellant] had every opportunity to claim he was being coerced, either to accept or to reject the plea offer and did not do so. (N.T. 11-26-2018, pp. 3-6). Once again, Appellant's issue is without merit.

PCRA Ct. Op., 1/30/25, at 10 (some formatting altered).

After review, we conclude that Appellant provides no support for his bald assertion of ineffectiveness relating to alleged coercion surrounding the guilty plea. Boilerplate allegations and bald assertions cannot satisfy a petitioner's burden to prove ineffective assistance of counsel. *See Sandusky*, 203 A.3d at 1044. Here, the trial court conducted a colloquy concerning the guilty plea offered by the Commonwealth prior to the start of trial. *See* N.T. Pre-Trial Colloquy, 11/26/18, at 3-6. Appellant stated on the record that he understood the terms of the guilty plea offer, and he chose to reject it and proceed to trial. *See id.* at 3-6; *see*, *e.g.*, *Commonwealth v. Jabbie*, 200 A.3d 500,

_____

[4] *See* N.T. Pre-trial Colloquy, 11/26/18, at 3-6 (reflecting that Appellant stated that he understood and rejected the Commonwealth's guilty plea offer, and he opted to proceed to trial).

506 (Pa. Super. 2018) (stating that "a defendant is bound by the statements which he makes during his plea colloquy" (citation omitted)). At no time during the pre-trial colloquy did Appellant mention coercion to accept or reject the plea. Because Appellant now baldly claims that his decision concerning the guilty plea was coerced but fails to provide any support other than his own affidavit filed two months after his PCRA petition,[5] we conclude that Appellant has failed to satisfy the arguable merit and prejudice prongs of his ineffectiveness claim. *See Sandusky*, 203 A.3d at 1043-44 (stating the prongs of the test for ineffective assistance of counsel and noting that the failure to satisfy any one prong of the ineffectiveness test requires rejection of the claim of ineffectiveness); *accord Commonwealth v. Natividad*, 938 A.2d 310, 324 (Pa. 2007) (holding that the bald allegation that the petitioner was prejudiced by counsel's failure to make an objection failed to establish the prejudice prong of the test for ineffective assistance of counsel). Therefore, Appellant is not entitled to relief on this issue. *See Commonwealth v. Bradshaw*, 1061 MDA 2019, 2020 WL 4920017, at *4 (Pa. Super. filed Aug. 21, 2020) (unpublished mem.) (stating the "[a]ppellant's bald assertions fail to satisfy the arguable merit and prejudice prongs of the ineffectiveness test" (citations omitted)).[6]

_____

[5] *See* Affidavit/Declaration of Appellant, 6/6/22.

[6] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

## Cumulative Ineffectiveness

In his final claim of error, Appellant states that "[w]hile each of the claims may not individually entitle Appellant to relief, he is still entitled to relief when [those issues are] considered cumulatively." Appellant's Brief at 48. Appellant contends, without elaboration, that "[b]ut for these cumulative errors there would have been a reasonable probability that the outcome of the proceedings would have been different." *Id.* at 49. Appellant baldly concludes that "[t]he cumulative effect of counsel's ineffective acts and omissions rendered the verdict inherently unreliable, violating Appellant's constitutional right to a fair trial and due process of law." *Id.* at 50 (citation omitted).

After review, we conclude that Appellant's issue is completely undeveloped and, for that reason, Appellant's final claim of error is waived.[7] *See Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (finding an issue waived for lack of development); *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014) (reiterating that where a petitioner "fails to meaningfully discuss each of the three ineffectiveness prongs, [the petitioner] is not entitled to relief, and we are constrained to find such claims waived for lack of development" (citations and quotation marks omitted)).

_____

[7] In any event, because we concluded that Appellant is not entitled to relief on any of his preceding claims of error, no relief is due on his cumulative claim. *See Commonwealth v. Saylor*, 308 A.3d 869, 879 (Pa. Super. 2024) (stating that "[n]o number of failed claims may collectively warrant relief if they fail to do so individually" (citation omitted)), *appeal denied*, 321 A.3d 863 (Pa. 2024).

For the reasons set forth above, we conclude that the PCRA court's determination is supported by the record and free of legal error. *See Sandusky*, 203 A.3d at 1043. Therefore, Appellant is not entitled to relief. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/8/2026</u>