J-A07014-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FREDDIE LUNA-REYES | : | |
| | : | |
| Appellant | : | No. 767 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 6, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006381-2023

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY BOWES, J.:                          **FILED: MAY 26, 2026**

Freddie Luna-Reyes appeals from the judgment of sentence of life imprisonment without the possibility of parole for murder of the first degree and persons not to possess a firearm.  We affirm.

On the evening of October 3, 2023, Jesus Cintron-Molina was walking westbound along West Market Street in York as Appellant rode his bicycle eastbound on the opposing sidewalk.  Appellant was halfway up the block when he turned his bicycle around to converse with Cintron-Molina, who had been calling out to him from across the street.  Appellant sat on his bike facing westbound while he and Cintron-Molina engaged in a verbal altercation on opposite sides of the road that lasted several minutes.  Cintron-Molina was animated during their exchange, but was not visibly armed.  Appellant, however, had pulled a firearm out of his waistband and held it within Cintron-

Molina's view as they continued to argue. Appellant eventually turned his bike to face the victim, and as the conversation escalated, Appellant lifted his gun and pointed it at Cintron-Molina. The victim began to cross the street and approach Appellant, but did not threaten him or display any weapons. Appellant dismounted his bike and stepped off the sidewalk, still pointing his firearm at the victim. As Cintron-Molina continued to get closer, Appellant charged him and fired seven shots, striking him at least two times. Appellant then fled to a house in Lebanon, where his daughter's mother resided. The entire interaction was captured by multiple surveillance videos.

David Kahley of the West York Borough Police Department was driving eastbound on West Market Street when he heard several gunshots from behind. He turned his police cruiser around to investigate and observed Cintron-Molina lying in the middle of the street. The victim was still alive at the time and identified Appellant by name as the shooter and provided a description. He died shortly thereafter. Officers did not find a firearm on or near the victim. After unsuccessfully searching Appellant's home that evening, two days later police obtained a warrant for the house in Lebanon and arrested Appellant there.

Based on the aforementioned events, Appellant was charged with first-degree murder, third-degree murder, and persons not to possess a firearm. At the ensuing jury trial on the homicide charges, investigating officers established the above facts and the jury watched multiple surveillance videos.

Appellant testified in his defense. He explained that he began to date Cintron-Molina's wife before they were officially separated and he was scared of Cintron-Molina after the two had multiple altercations and expressed clear disdain for one another. Appellant admitted to shooting the victim, but stated his belief that Cintron-Molina had stolen his wife's gun three weeks prior and was therefore armed during the incident in question. Nevertheless, Appellant confirmed that Cintron-Molina did not threaten him during the exchange and never displayed a weapon.

Before deliberations, Appellant requested a jury instruction for self-defense, or, in the alternative, imperfect self-defense. Following argument, the court denied Appellant's requests because it found that no facts supported a claim that he acted in self-defense. The jury subsequently convicted Appellant of first-degree murder. The court deferred sentencing, and at the ensuing hearing Appellant entered a guilty plea to persons not to possess a firearm. The court thereafter imposed life imprisonment without the possibility of parole for the homicide conviction, and a concurrent five to ten years for the firearms offense.

This timely appeal followed. Appellant and the trial court complied with the requirements of Pa.R.A.P. 1925. He now presents the following question for our consideration:

> Did the lower court abuse its discretion in denying [Appellant's] request for self-defense and voluntary manslaughter instructions where his own testimony as well as other trial evidence supported: A) each element of self-defense; or, in the alternative, B) the

requisite components of voluntary manslaughter under a theory of imperfect self-defense?

Appellant's brief at 4.

With respect to jury instructions, "our standard of review . . . is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Green*, 273 A.3d 1080, 1084 (Pa.Super. 2022) (cleaned up). Additionally, "the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa.Super. 2013) (cleaned up).

Our Crimes Code provides that "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). To be entitled to a self-defense instruction, "a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." *Green*, 273 A.3d at 1085 (cleaned up). Our High Court has explained:

> A claim of self-defense (or justification, to use the term employed in the Crimes Code) requires evidence establishing three elements: (a) that the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking

the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat.

*Commonwealth v. Mouzon*, 53 A.3d 738, 740-41 (Pa. 2012) (cleaned up). The claim "may consist of evidence from whatever source." ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1287 (Pa.Super. 2018) (cleaned up).

These standards likewise apply to an instruction for voluntary manslaughter, often referred to as imperfect self-defense, except that it entails "an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life." ***Commonwealth v. Bracey***, 795 A.2d 935, 947 (Pa. 2001) (cleaned up). Pertinently, "[a]ll other principles of justification under 18 Pa.C.S. § 505 must still be met in order to establish unreasonable belief voluntary manslaughter," including that the defendant "was free from fault in provoking or continuing the difficulty which resulted in the killing." *Id*. (cleaned up).

Appellant contends that, as to a self-defense instruction, he "provided evidence that he reasonably believed such force was necessary to protect himself." Appellant's brief at 24. More specifically, he maintains that "although Cintron-Molina did not explicitly threaten him, he displayed a gun to Cintron-Molina and instead of backing away, [Cintron-Molina] kept approaching [Appellant]." *Id*. (cleaned up). He explains that "[t]his was highly threatening behavior where [he] believed Cintron-Molina had a gun." *Id*. Further, Appellant claims that he was not the aggressor because he only engaged with Cintron-Molina after he had called out to Appellant. *Id*. at 27.

On this point, he also states that it was "significant" that "Cintron-Molina would not stop walking toward him-even after he displayed a gun and told him to stay away[.]" *Id*. He finally asserts that he did not have a duty to retreat where he believed that Cintron-Molina had a firearm, as he did not want to turn his back on someone he thought was armed. *Id*. at 28. In the alternative, he argues that if his belief that Cintron-Molina had a gun was unreasonable, he was entitled to an imperfect self-defense instruction. *Id*. at 34.

The trial court provided the following rationale for denying Appellant's requests:

> Here, the evidence failed to establish a claim of self-defense. The surveillance video . . . shows Cintron-Molina walking up the sidewalk in a relaxed-looking manner. Appellant enters the video on his bicycle, travelling in the opposite direction, on the other side of the street . . . . Cintron-Molina continued walking for another [ten to twelve] seconds then he looked across the street and turning toward the roadway, without changing his demeanor. An exchange takes place and Cintron-Molina gestures with his hands; however, it does not appear he has a weapon in his hands. At time marker 3:39, Appellant reappears in the video having come back towards Cintron-Molina, on the other side of the street, and can be seen through the branches of the tree. The exchange continues with Cintron-Molina crossing the street toward Appellant, still gesticulating with his arms. Appellant does not move away and, in fact, moves toward Cintron-Molina throughout the exchange and as Appellant fires the weapon.
>
> Appellant's own testimony confirms that Appellant was the aggressor. When asked, on direct examination, if there were any threats from either side, Appellant testified "[a]t that moment he didn't threaten me at all, but I was showing him the firearm and instead of backing away, he kept approaching me." During cross-examination, Appellant confirmed that Cintron-Molina did not have a gun in his hands. Further, Appellant testified that when he

- 6 -

realized Cintron-Molina was there he stopped right away. Appellant went on to explain that before disembarking from his bicycle, he already had his gun out.

In light of both Appellant's own testimony and a review of the video surveillance, th[e c]ourt determined that Appellant did not meet the three elements necessary for a claim of self-defense. First, Appellant was not free from fault and was in fact the aggressor. Second, Appellant had ample opportunity to retreat and failed to do so thereby violating his duty to retreat. It was not necessary for th[e c]ourt to consider the reasonableness of Appellant's belief as Appellant failed to meet two of the elements. As a result, th[e c]ourt did not commit an abuse of discretion and properly found that Appellant was not entitled to a jury instruction on justification as a matter of law.

Trial Court Opinion, 8/4/25, at 9-10 (citations omitted). For the same reasons, the court found that it "did not commit an abuse of discretion and properly found that Appellant was not entitled to a jury instruction on voluntary manslaughter, imperfect self-defense, as a matter of law." **Id**. at 12.

Based on the court's well-reasoned determination, we cannot conclude that it abused its discretion in denying Appellant's request for a self-defense or imperfect self-defense instruction. The surveillance footage of the shooting, which this Court reviewed, confirmed that Appellant was the aggressor and violated his duty to retreat.

Appellant provoked the situation when he turned his bike around to engage with Cintron-Molina. Regardless of whether Cintron-Molina called out to Appellant, and despite his claim that he only brandished his firearm to scare the victim, Appellant verified that Cintron-Molina did not threaten him or

display any weapons, and he had already drawn his firearm before Cintron-Molina approached him. **See Commonwealth v. Harris**, 665 A.2d 1172, 1175 (Pa. 1995) (affirming decision not to issue a self-defense instruction where the appellant's testimony bore out that he confronted the victim first with an unloaded shotgun to scare him, and when the victim did not leave, the appellant proceeded to load his gun and shoot the victim).

The videos also demonstrate that Appellant failed to retreat, despite ample opportunity to do so. Instead of riding away on his bike at any point during their several-minute interaction, Appellant chose to point his firearm at the victim and, when Cintron-Molina approached, Appellant stepped off of his bike and continued to aim the gun at him. **See Commonwealth v. Saylor**, 308 A.3d 869, 878 (Pa.Super. 2024) (noting that the trial court properly denied a self-defense instruction where "Saylor was in a moving vehicle and [the victim] was on foot, and . . . Saylor had many opportunities to avoid the situation entirely"). Moreover, instead of backing away, Appellant charged Cintron-Molina once he got closer.

Appellant thus fell short of his burden to establish his entitlement to a self-defense instruction where the evidence demonstrated that he was the initial aggressor and failed to retreat. In accordance with this conclusion, we likewise find that the court properly denied an imperfect self-defense instruction. **See Bracey**, 795 A.2d at 947. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/26/2026